## Henkleman et al. v. Peterson et al.

1. *Bonds—Not Under Seal.*—An injunction bond not under seal is not binding in law.

2. *Sureties—The Extent of Their Obligation.*—The extent of the obligation of a surety is to be determined by the agreement he actually signs, and it can not be varied, changed or enlarged by any decree of court.

3. Sureties—*Equity in Favor of Reformation, etc.*—No equities arise in favor of a party seeking a reformation of a bond not binding at law, against a mere surety, who has received no consideration for the agreement it is alleged he intended to make, but did not. The surety may stand upon the terms of the bond he has executed, and if it does not bind him, upon what equitable principle can it be said his agreement shall be enforced so that it shall be made to bear the burden that would otherwise fall on the party seeking relief?

4. Injunction Bonds—*Defective Reformation.*—It is universally recognized that the instrument signed by a surety will not be reformed except upon evidence of mistake that leaves no doubt.

5. Injunction Bond—*Not Under Seal—Remedy.*—It seems that an action of assumpsit may be maintained upon an injunction bond not under seal, as a contract of indemnity against the sureties, based upon what they did and what was in consequence thereof done.

**Memorandum.**—In chancery. In the Superior Court of Cook County; the Hon. Philip Stein, Judge, presiding. Bill to reform an injunction bond; dismissed for want of equity; appeal by complainants. Heard in this court at the March term, 1893, and affirmed. Opinion filed April 19, 1893.

The opinion states the case.

Tenney, Church & Coffeen, attorneys for appellants.

Appellees' Brief, James A. Peterson, Attorney.

A bill will not lie to reform a bond given in a judicial proceeding. The remedy is at law in cause wherein bond was given. Craft v. Dickens, 78 Ill. 131; Arter v. Democrat, 72 Ill. 434; Keegan v. O'Callaghan, 35 Ill. App. 142.

The mistake must be mutual. No mistakes corrected which affect sureties on a bond. Trustees of Schools v. Otis, 85 Ill. 179; Arter v. Democrat, 72 Ill. 434.

If complainants seeking relief are guilty of negligence in

the matter sought to be corrected, the bill must be dismissed. 1 Story Eq. Juris. 146; Penny v. Martin, 4 Johns. Ch. 566.

Any agreement or act by the obligee which delays or suspends the right to coerce payment to the prejudice of the surety, will discharge his liability. Warner v. Helm, 6 Ill. (1 Gil.) 320.

OPINION OF THE COURT, WATERMAN, J.

Appellants filed in the Superior Court their bill setting up, among other things, that in the Circuit Court, in a chancery cause therein pending wherein an interlocutory injunction had been granted, a bond theretofore given for the protection of the parties affected by the injunction having been found to be insufficient, it was ordered that a new bond in the penal sum of $5,000 be filed, to be approved by the clerk of the court. That thereupon said appellee, Peterson, in consideration thereof and of the continuance of the injunction, undertook to execute for himself and to procure for himself a proper and sufficient bond, in accordance with the order of court; and said Peterson, on or before January 13, 1891, in pursuance of such order and undertaking, and for the purpose of complying therewith, executed for himself as principal, and procured to be executed by the appellees Stanton and Keith, as sureties, an instrument in writing of the following purport :

" Know all men by these presents, that we, John L. Peterson, as principal, and W. A. Stanton and Elbridge G. Keith, as sureties, are held and firmly bound unto Frederick Henkleman, jointly and severally, in the sum of five thousand dollars, to be paid to the said obligees above named, jointly and severally, their successors, executors, administrators or assigns, for which payment, well and truly to be made, we bind ourselves, jointly and severally, and our and each of our respective heirs, executors and administrators, firmly by these presents.

Sealed with our seals, and dated this eighth day of January, A. D. 1891.

Whereas, the above bounden John L. Peterson has filed his bill of complaint in the Circuit Court of Cook County

and State of Illinois, against the above named obligees impleaded with other defendants therein named, praying among other things for an injunction to restrain the said James H. Gilbert, as sheriff of Cook county, from paying the proceeds of the sale of the property of the Brabrook Tailoring Company in satisfaction of certain writs *fieri facias* on certain judgments against said company in said bill mentioned, to the plaintiffs therein named.

And, whereas, said court heretofore allowed an injunction for that purpose, according to the prayer of said bill, upon the said John L. Peterson giving a bond in the sum of $500, with security as provided by law, and afterward upon its being represented to the court by counsel for certain of said defendants that the bond filed herein on the issuing of said injunction, was for an insufficient amount and worthless in form, the court, in consideration of the continuance of said injunction until the hearing and determination of a motion to dissolve the same, and until the further order of the court, required the said complainant to file a new bond in the penal sum of five thousand dollars, properly conditioned for the due protection of said obligees; now, therefore, the condition of the above obligation is such that if the above bounden John L. Peterson, his executors or administrators, or any of them, shall and do well and truly pay, or cause to be paid to the said obligees above named, their successors, executors, administrators or assigns, jointly and severally, all damages which have heretofore been or hereafter may be sustained by the said defendants above named, or any of them, by reason of the wrongful issuing of such injunction, and also all such costs and damages as shall be awarded against the said complainant, in case the said injunction shall be dissolved, then the above obligations to be void, otherwise to be and remain in full force and virtue.

John L. Peterson,

W. A. Stanton,

Elbridge G. Keith.

Sealed and delivered in the presence of Samuel V. A. White.

Approved:    Henry Best, Clerk."

Which said instrument in writing was then and there intended by Peterson, Keith and Stanton, the obligors therein named, to be a good, valid and sufficient bond for the purposes therein expressed; but complainants allege, that although said instrument in writing was in form of a bond and signed by Peterson, Keith and Stanton, and was in all respects, except as hereinafter mentioned, a good and sufficient bond, yet Peterson, Keith and Stanton, in executing the same, inadvertently, and by mistake and oversight on their part, omitted to affix to their signatures any seal, or scrawl by way of seal, and thereafter and on January 13, 1891, said Peterson, in further pursuance of said order and undertaking, presented the instrument to the clerk for his approval, and to be filed, when approved, as a valid and sufficient bond under said order, and that when the instrument was presented to the clerk, whose duty it was to examine it, and ascertain if it was in due form and properly executed, he inadvertently, and by mistake and oversight, failed to notice the absence of seal, and thereupon approved and filed it as good and sufficient bond given in compliance with the order.

Afterward, on January 15, 1891, Henkleman, Jackson & Co. and Roe appealed from the order of court granting said injunction, to the Appellate Court, and that court, on May 5, 1891, rendered judgment reversing the order appealed from, whereby the injunction became dissolved.

That in consequence of the injunction, the sheriff retained in his hands the proceeds of sale from January 1, 1891, until June 30, 1891, during all of which time the complainants were deprived of the use of $12,484.92, to their damage of $375. And complainants were also put to great expense for employment of counsel and other matters in the Circuit Court and in the Appellate Court, in endeavoring to procure and in procuring the dissolution of said injunction, to wit, in the sum of $1,050, which the principal defendants, by virtue of the obligation created and intended to be created by the instrument in writing before referred to, are in equity bound to pay complainants as their damages sustained by reason of the injunction.

Henkleman v. Peterson.

That complainants have demanded of the principal defendants that they pay their damages, but that said defendants not only refuse to pay the same, or any part thereof, but now wrongfully claim that in consequence of their omission to affix to their signatures to said instrument in writing any seals, or scrawls by way of seals, the said instrument is wholly invalid, and creates no obligation on their part to respond to these complainants in any way whatever for their damages, which claim and pretense complainants insist is wrongful and fraudulent and contrary to equity; but that nevertheless, the omission of the seals or scrawls, and the claims and pretenses which the defendants now put forward touching the same, constitute obstacles to the obtaining, by these complainants, of full and adequate relief against the principal defendants in a court of law, and render it necessary to complainants to resort to a court of equity.

Complainants pray answer without oath, and a decree that the instrument in writing was and is the deed of the said principal defendants, and each of them, and that it was and is a good, valid and sufficient bond for the purposes, and according to the true intent and meaning thereof, as therein recited, and that it created and constitutes a valid obligation on the part of the principal defendants, and each of them, to pay to these complainants their damages by reason of said injunction, and if necessary, that said defendants affix their seals to their signatures, or that some suitable person be directed by the court to do so, and that complainants' damages, by reason of said injunction, may be ascertained by the court, and the principal defendants decreed to pay the same, with such other and further relief as the case may require.

Stanton and Keith in their answer to said bill deny that they made any mistake in executing said instrument.

Upon the hearing, the court dismissed the bill for want of equity, and the complainants therein prosecute this appeal.

The cases in which courts of equity, having found that the

intention of the makers of deeds, mortgages, bonds of a principal, only, was to make sealed and perfect instruments, have treated such instruments as sealed and given relief thereon, are numerous. Michel v. Tinsley, 69 Mo. 442; Town of Colchester v. Culver, 29 Vt. 111; Probate Court v. May, 52 Vt.182; Bernhard Township v. Stebbins, 109 U. S. 341; Wadsworth v. Wendell, 5 Johns. Ch. 224; Conover's Admr. v. Brown's Exrs. (N. J.), 23 Atl. Rep. 507–511; Town of Rutland v. Paige, 24 Vt. 181; Allen v. Elder, 76 Ga. 674.

In some cases it has been held that the instrument itself being one that required a seal to make it effective and containing the recital "signed and sealed," afforded sufficient evidence of intention to affix a seal. Town of Colchester v. Culver, *supra; * Probate Court v. May, *supra.*

There are also many cases in which relief has, against a surety, been afforded in equity where there was no remedy at law. Brandt on Suretyship and Guaranty, Sec. 141.

The principle followed in these cases seems to be that equity affords relief on the ground of mistake; but where it is sought to reform an instrument against a surety on the ground of mistake, evidence of the necessary facts must be so clear as to leave no doubt.

In Town of Montville v. Houghton, 7 Conn. 543, Town of Colchester v. Culver, 52 Vt. 111, and Town of Rutland v. Paige, 24 Vt. 181, relief was had in equity against sureties who had neglected to seal the bonds by them signed.

Our own Supreme Court, in The Trustees of Schools v. Otis, 85 Ill. 179, said: "Whether a court of chancery will assume jurisdiction to reform an official or other bond against sureties, is a question upon which the authorities are not harmonious. The point has never been directly decided by this court, but on first impression we are inclined to adopt the doctrine of those cases that declare the extent of the obligation of a surety is to be determined by the agreement he actually signs, and that it can not be varied, changed or enlarged by any decree, as founded upon the better reasoning, and more fully sustained by authority.

One reason that lies at the foundation of this series of

cases is, that no equities arise in favor of a party seeking a reformation of a bond not binding at law, against a mere surety, who has received no consideration for the agreement it alleged he intended to make, but did not. The surety may stand upon the terms of the bond he has executed, and if that does not bind him, upon what equitable principle can it be said his agreement shall be reformed, so that it shall be made to bear the burden that would otherwise fall on the party seeking relief."

The court did not base its disposition of that case entirely upon the principle above set forth, yet as the latest announcement of the court upon this subject, we deem it authoritative. See also Craft v. Dickens, 78 Ill. 131.

It is universally recognized that the instrument signed by a surety will not be reformed except upon evidence of mistake that leaves no doubt.

We can not say that such is the effect of the evidence in this case. The sureties deny that they made any mistake. Where a party has executed an instrument for the conveyance of land, to the validity of which a seal is required, the presumption that he meant to make an instrument that would convey, is irresistible, and where in addition the document contains the recital, "In witness whereof I have set my hand and seal," or " signed and sealed by the parties aforesaid," the inference that the omission of a seal was a mere mistake, is such as to leave no doubt.

In the present case the sureties doubtless intended to enter into a contract of indemnity in the sum of $5,000, and they doubtless would have sealed the contract if they had been asked so to do; but they were not asked. They were not lawyers, and it probably did not occur to them that seals were necessary. If asked to sign a bond in the penal sum of $6,000, they would doubtless have done so, but we could not for that reason change the penalty to that amount. As we have said, we think that they failed to put seals opposite their names simply because they were not asked so to do; they intended to become sureties as described in the instrument; they signed it, and they believed it to be a

valid contract of indemnity. That, beyond doubt, they meant that it should be a contract the consideration of which could not be inquired into, there is not sufficient evidence for finding. The probability is, that this was a matter about which they did not think.

It has not been made to appear to us that the contract of indemnity is invalid; that an action of assumpsit can not be maintained against these sureties, based upon what they did, and what was in consequence thereof done. We do not think, as is said in Town of Montville v. Houghton, *supra*, that although an action at law may be maintained, appellants are entitled to a bond, the consideration of which can not be inquired into.

Actions at law upon contracts of indemnity from which the seals had by mistake been omitted, have been maintained; see Kelly v. McCormick, 28 N. Y. 318; Board of Commissioners v. Tower et al., 28 Minn. 45; and see also Shaw et al. v. Tobias, 3 N. Y. 188, and Wolsey et al. v. Neeley, 146 Ill. App. 387.

In the case of Fournier v. Faggott, 3 Scam. 347, an action at law upon an appeal bond, sufficient in form and substance as a bond, but which did not conform to the statute, to the defense set up that the bond did not conform to the statute, the court said: "There can be no doubt but that the objection would have been sustained if made in the court below, when the party would have been allowed to amend the bond or file a new one. The objection, however, comes from the obligor himself, and at a time the plaintiff below can not compel him to amend by giving a new one. * * * Reason and justice forbid to the obligator such an advantage of his own act to the prejudice of the other party, after having enjoyed the full benefit of the object of the contract."

The decree of the Superior Court dismissing the bill for want of equity is affirmed.